**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JESUS LEBRON,
                Petitioner,

      v.                                      No. 05-CV-1370
                                              (TJM/DRH)
MIKE McGINNIS,
                Respondent.

---

**APPEARANCES:**                  **OF COUNSEL:**

JESUS LEBRON
Petitioner Pro-Se
No. 99-A-3299
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011

HON. ANDREW M. CUOMO        THOMAS B. LITSKY, ESQ.
Attorney General of the            Assistant Attorney General
  State of New York
Attorney for Respondent
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

      Petitioner pro se Jesus Lebron ("Lebron") is currently an inmate in the custody of the New York State Department of Correctional Services at Attica Correctional Facility. Lebron was convicted in Albany County on April 6, 1999 of murder and attempted robbery. Lebron was sentenced to an aggregate term of life imprisonment without the possibility of parole and

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

is currently serving that sentence. Lebron now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) his Sixth Amendment right to effective trial counsel was violated; (2) he was unconstitutionally convicted of, and sentenced on, four counts of murder, and (3) he was denied his constitutional right to equal protection at sentencing. For the reasons which follow, it is recommended that the petition be denied.

## I. Background

In the early morning of December 19, 1997, Jesus Lebron, Aaron Bebo, Shymel Curry, and Justin Franklin drove to Washington Park in the City of Albany. When they arrived, they saw two men, Larry Omar Miller and Lamel Robinson, walking inside the park. T. 423-24, 429-38.[2] Franklin remained inside the car while Lebron, Bebo, and Curry got out of the car and followed the two men, intending to rob them. T. 430. When they were approached, Miller and Robinson attempted to tell Lebron, Bebo, and Curry that they had nothing to give them. T. 269-85, 429-38. Miller and Robinson were then shot and killed. T. 269-85, 429-38. Lebron, Bebo, and Curry then ran away in separate directions. T. 438-39. Both Bebo and Curry were arrested the next day and gave statements to the police implicating Lebron in the murders. T. 442-43; 439-44. Lebron was arrested on December 26, 1997. T. 599-601.

Lebron was indicted, found guilty of multiple counts of murder and attempted robbery,

---

[2] "T." followed by a number refers to the pages of the trial transcript. Docket No. 17.

and sentenced as indicated above.  T. 868; S. 15-17.[3]  The conviction was affirmed by the Appellate Division.  People v. Lebron, 305 A.D.2d 799 (3d Dep't 2003).  On July 21, 2003, the New York Court of Appeals denied Lebron's leave to appeal.  People v. Lebron, 796 N.E.2d 486 (2003).  Lebron, proceeding pro se, then filed a motion to vacate his judgement pursuant to N.Y. Crim. Proc. Law § 440.10.  Docket No. 17, attach, 5.  The motion was denied by the County Court on December 13, 2004.  Id., Ex. F.  This action followed.

## II. Discussion

### A. Timeliness

As a threshold matter, respondent contends that Lebron's petition is time-barred.  Pursuant to 28 U.S.C. § 2244(d)(1), an application for a writ of habeas corpus by a person in state custody is subject to a one-year period of limitation.  28 U.S.C. § 2244(d)(1) (2003); Ross v. Artuz, 150 F.3d 97, 98 (2d Cir. 1998).  The limitations period begins to run from the date the conviction becomes final.  28 U.S.C. § 2244(d)(1).  A conviction becomes final ninety days after the highest state court denies leave to appeal or affirms the conviction.  See Sup. Ct. R. 13(1) (filing for application for Supreme Court review must be within ninety days of decision of highest state court); see Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001).  Here, the Court of Appeals denied Lebron's application for leave to appeal on July 21, 2003.  Therefore, Lebron's conviction became final ninety days later, on October 19, 2003.  Lebron thus had one year from that date, or until October 19, 2004, to file his habeas petition.

This one-year time period is tolled during the pendency of a properly filed state

---

[3] "S." followed by a number refers to the pages of the sentencing hearing transcript. Docket No. 17.

3

collateral proceeding.  28 U.S.C. § 2244(d)(2); Bethea v. Girdich, 293 F.3d 577, 578 (2d Cir. 2002).  A state court collateral proceeding is pending from the date it is filed until the date decided and further appellate review is unavailable.  Artuz v. Bennett, 531 U.S. 4, 6 (2000).  Lebron filed a § 440.10 motion on September 30, 2004, which triggered the tolling provisions set forth in § 2244(d)(2).  Lebron filed this motion 19 days prior to the expiration of the deadline to file his habeas petition.  Thus, pursuant to § 440.10, Lebron had 19 days of the statute of limitations remaining in which to file his habeas petition after the denial of his state post-conviction motion became final.

     Lebron's § 440.10 motion was denied by the Albany County Court on December 13, 2004.  Lebron never sought leave to appeal the denial of his § 440.10 motion.  Lebron did apparently write a letter, dated December 29, 2004, to the Appellate Division noting that he was "trying to figure out how to appeal th[e] denial."  See Docket No. 17, attach. 7.  This prompted the Third Department to write Lebron a letter directing him to complete the enclosed form as an application for leave to appeal.  See Docket No. 17, attach. 8.  However, there is no record of Lebron ever filing a leave application.

     Therefore, Lebron's denial of his § 440.10 motion on December 13, 2004 became final on January 12, 2005, after the 30 day time period in which to file an appeal expired.  See N.Y. Crim. Proc. Law §§ 450.15(1), 460.10(4)(a).  Lebron claims that leave to appeal was denied by the Appellate Division on April 4, 2005.  The record is devoid of any evidence of any filing by Lebron after his letter dated December 29, 2004, that indicated a forthcoming leave application.  See Artuz v. Bennett, 531 U.S. 4, 8 (2000) (stating that although time is tolled during pendency of a "properly filed application" for state post-conviction relief, an application is not "properly filed" unless it is "delivered to, and accepted by, the appropriate

4

court officer for placement into the official record").

Thus, Lebron had until January 31, 2005 to file his habeas petition, which was nineteen days following the date that the denial of his § 440.10 motion became final. Lebron did not file his habeas petition until October 16, 2005,[4] almost nine months after the expiration of the statute of limitations. Even if Lebron's assertion that the Appellate Division denied him leave to appeal on April 4, 2005 is accepted, his present habeas petition would still be time-barred. Lebron would have had nineteen days after April 4, 2005, or until April 25, 2005, to file his habeas petition. Lebron's filing on October 16, 2005, would still render the petition untimely by nearly six months.

In addition, this court issued an order indicating that Lebron's habeas petition was likely time-barred. See Docket No. 6 at 1-3. Lebron then submitted a letter stating that he had filed his habeas petition on April 13, 2005, more than ten days prior to the expiration of the statute of limitations that he believed to be applicable. See Docket No. 7. Lebron submitted an attached letter that he contends he mailed in October 2005 requesting the status of his habeas petition that he had mailed on April 13, 2005. Id. He also attached a "Proof of Service," dated April 13, 2005 stating that he had served the Attorney General's Office with a copy of the habeas petition and supporting papers by forwarding them to prison officials for mailing. Id. However, these documents make no reference to Lebron sending a copy of the habeas petition to this Court. There is no record in this Court that Lebron filed

---

[4] Lebron's signature on the original petition was notarized on October 16, 2005 although the petition was not filed with the Court until October 20, 2005. Pet. (Docket No. 1) at 1, 6. Although not material to the determination here, the petition is deemed filed for purposes of the statute of limitations when tendered by the inmate to prison authorities for transmission to the court. See Houston v. Lack, 487 U.S. 266, 270-71 (1998); Hill v. Senkowski, 409 F. Supp. 2d 222, 228-29 (W.D.N.Y. 2006).

5

any papers prior to October 20, 2005.  See e.g., Abreu v. Superintendent, No. 05-CV-3922 (DC), 2006 WL 488724, at *1-3 (S.D.N.Y. Mar. 1, 2006).  Therefore, despite Lebron's arguments to the contrary, the statute of limitations period expired prior to the filing of his habeas petition.

Therefore, the petition on this ground should be denied.

### B.  Ineffective Assistance of Counsel[5]

The Sixth Amendment to the Constitution guarantees defendants the effective assistance of counsel.  U.S. Const. amend. VI.   To establish ineffective assistance of counsel, a petitioner must satisfy a two-prong test: (1) counsel's performance was deficient, and (2) this deficiency prejudiced the petitioner's defense.  See United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668 (1984)).  To satisfy the first prong, a court must ask "whether defense counsel's actions were objectively reasonable considering all the circumstances."  Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000).  This question requires a court to be "highly deferential" to counsel's performance.

---

[5]Respondent claims that various aspects of Lebron's ineffective assistance of counsel claim are unexhausted because Lebron never sought appeal to the Appellate Division regarding his ineffective assistance of counsel claim in his § 440.10 motion.  28 U.S.C. §§ 2254(b)(1)(A) & (c); Picard v. Connor, 404 U.S. 270, 275 (1971); Aparicio v. Artuz, 269 F.3d 78, 89 (2d Cir. 2001).  Even though these claims are unexhausted and Lebron is in procedural default, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") allows the writ to be "denied on the merits, notwithstanding the failure...to exhaust...." 28 U.S.C. § 2254(b)(2).  Thus, even though Lebron's claims of ineffective assistance of trial counsel for not (1) advising him that evidence of intoxication could have been used to negate an element of his offense and (2) failing to request an intoxication charge to the jury at trial may be procedurally precluded, they are also meritless for the reasons discussed below.  Therefore, respondent's procedural default contentions need not be addressed.

Strickland, 466 U.S. at 689. Furthermore, there is a strong presumption that counsel's conduct at trial was reasonable and that any conduct that is challenged might be considered sound trial strategy. Kieser v. New York, 56 F.3d 16, 18 (2d Cir. 1995) (per curiam); see also Maddox v. Lord, 818 F.2d 1058, 1061 (2d Cir. 1987). To satisfy the second prong, a court must determine whether there is a reasonable probability that, but for the deficiency, the outcome of the proceeding would have been different. McKee v. United States, 167 F.3d 103, 106 (2d Cir. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Lebron contends that he was denied the effective assistance of counsel when his attorney failed to (1) advise him that evidence of intoxication could have been used to negate an element of his offense and (2) request an intoxication charge to the jury at trial. However, Lebron's two contentions concern trial strategy, which may not be second-guessed on habeas review. See United States v. Helgesen, 669 F.2d 69, 72 (2d Cir. 1982) (discussing the Second Circuit's "reluctance to second-guess matters of trial strategy simply because the chosen strategy has failed"); see also United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) ("[C]ounsel's decision as to 'whether to call specific witnesses–even ones that might offer exculpatory evidence–is ordinarily not viewed as a lapse in professional representation'") (citations omitted)).

The defense strategy at trial was to challenge the credibility of Lebron's two co-defendants who testified and to attempt to expose the deficiencies in the prosecution's case. This was an objectively reasonable trial strategy in light of the fact that, prior to trial, Lebron gave a statement to police that he was present at the scene in a car when the murders occurred, although he denied ever leaving the car. T. 616-24. Rather than contradict

Lebron's statements to police, by admitting that Lebron had killed the victims in a state of severe intoxication, Lebron's defense counsel was objectively reasonable in pursuing a strategy consistent with Lebron's statements to police.

Therefore, in the alternative, the petition on this ground should be denied on its merits.

### C.  Multiple Counts of Conviction

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl.2.  "It protects against a second prosecution after acquittal . . . conviction . . . and multiple punishments." Morris v. Reynolds, 264 F.3d 38, 48 (2d Cir. 2001) (quoting Ohio v. Johnson, 467 U.S. 493, 498 (1984)).  Lebron contends that his convictions on four counts of murder, based on the murder of only two victims, and on two counts each of attempted first-degree robbery and the lesser-included offense of attempted second-degree robbery, were unconstitutional.  Lebron alleges the convictions are multiplicitous and violate his right not to be placed in double jeopardy.  Respondent contends that all the convictions were proper and constitutional.

Lebron's contentions are without merit.  First, the four murder convictions, based on the murders of Miller and Robinson, were neither multiplicitous nor unconstitutional.  Lebron was convicted of two counts of first-degree murder under New York State Penal Law § 125.27(1)(a)(vii) and two counts under § 125.27(1)(a)(viii).  First-degree murder under subsection (1)(a)(vii) and first-degree murder under subsection (1)(a)(viii) are not inclusory concurrent counts, and thus a defendant can be convicted of both.  The two subsections describe different methods of committing first-degree murder and, therefore, are two distinct and separate offenses.  Although the separate counts under subdivisions (vii) and (viii) are

8

"concurrent counts because they were committed through a single act," they are "noninclusory concurrent counts because one is not greater than the other and one does not contain all of the elements of the other." People v. Davis, 165 A.D.2d 610, 612 (4th Dep't 1991) (citing N.Y. Crim. Proc. Law § 300.30(3)-(4)).  Thus, Lebron's convictions on four counts of first-degree murder are not unconstitutional.

Second, it appears that Lebron also claims that his convictions for two counts of attempted first-degree robbery and two counts of attempted second-degree robbery were unconstitutional.  Again, Lebron's contentions are without merit.  Attempted second-degree robbery is not a lesser-included offense of attempted first-degree robbery.  Lebron was convicted of attempted first-degree robbery under Penal Law §§ 110.00 and 160.15(2), which provides that a person is guilty of the crime when he attempts to "forcibly steal[] property and when, in the course of [attempting to] commi[t] the crime or of immediate flight therefrom, he or another participant . . . [i]s armed with a deadly weapon."  Meanwhile, an attempt to commit second-degree robbery under Penal Law § 160.10(1), under which Lebron was convicted, involves an attempt to "forcibly steal[] property" when "aided by another person actually present."  Therefore, an attempt to commit first-degree robbery under § 160.15(2) does not include "aid[] by another person actually present," which is an element of attempted second degree robbery. Thus, the counts of attempted second-degree robbery are not lesser included offenses.  A defendant can be convicted of both crimes; therefore, Lebron's convictions were neither multiplicitous nor unconstitutional.

Accordingly, in the alternative, the petition on this ground should be denied on its merits.

### D. Equal Protection

Lebron next contends that he was denied equal protection of the law because he, as a non-capital defendant convicted of first-degree murder, was sentenced by a judge, rather than a jury. Respondent argues that the decision was not contrary to, or an unreasonable application of, clearly-established Supreme Court law.

If a state court rejects a constitutional claim, a habeas court may not grant relief simply because it finds that constitutional error has been committed. Holland v. Donnelly, 216 F. Supp. 2d 227, 243 (S.D.N.Y. 2002), aff'd, 324 F.3d 99 (2d Cir. 2003). Habeas relief is only available when the state court's decision is contrary to, or an unreasonable application of, Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). This particular standard applies when the state court (1) disposes of a federal claim on the merits and (2) reduces its disposition to judgment–even if it does not explicitly refer to the federal claim or to relevant federal case law. Sellan v. Kuhlman, 261 F.3d 303, 314 (2d Cir. 2001).

The state courts denied Lebron's claim on the merits. The argument was clearly presented in Lebron's pro se supplemental brief on direct appeal to the Appellate Division. See Docket No. 17, attachment 2 at 2-6. The Appellate Division ruled that those of Lebron's arguments not specifically addressed in its opinion were "lacking in merit." People v. Lebron, 305 A.D.2d at 759. The rejection of Lebron's constitutional argument is not directly contrary to any decision of the Supreme Court. See Holland, 216 F. Supp. 2d at 243. Neither party cites, nor has the court found, any Supreme Court case addressing the equal protection implications of distinctions between judge and jury sentencing. The question then becomes whether the state court's rejection of Lebron's argument was an "unreasonable application" of Supreme Court precedent. In his pro se supplemental brief, Lebron argues that the

10

principle to be applied is the very lenient rational basis test that requires that the sentencing scheme be rationally related to a legitimate state purpose.

The jury convicted Lebron of four counts of first-degree murder, for which New York law authorizes capital punishment. New York permits first-degree murderers to be sentenced to death, life imprisonment without parole, or a parolable indeterminate sentence of at least twenty years to life imprisonment. Holland, 216 F. Supp. 2d at 240. The prosecutor is given discretion to determine, at any time, that the death penalty will not be sought in a particular case. See N.Y. Crim. Proc. L. § 400.27(1). If the prosecutor does not seek the death penalty, then no special sentencing proceeding is required. "Instead, upon a verdict or plea of guilty of first-degree murder, sentencing authority is vested in the judge, who may sentence the defendant either to life without parole or to an indeterminate term of no less than 20 years to life." Holland, 216 F. Supp. 2d at 241. In Lebron's case, the prosecutor elected not to seek execution.

The argument Lebron makes, the facts of the case, and the rational basis test that is urged by Lebron is nearly identical to what the defendant in Holland argued and that which the district court and 2nd Circuit denied. See Holland, 216 F. Supp. 2d 227. In Holland, the district court and the Second Circuit both held that the distinction drawn by the statute is rational. Id. at 244. The court cited two principal reasons. First, when capital punishment is sought, the jury plays a unique role in sentencing. Id. at 244. Second, the sentence of life without parole plays a different role in a capital sentencing trial than it does in a non-capital sentencing. Id. at 246. In capital cases, the jury's option to give life without parole mitigates the likelihood that the death penalty will be imposed. Id. In non-capital cases, the option of life without parole "represents a trade-off for the liberal availability of prosecutorial discretion,

11

provided as a hedge against the concern that prosecutors exercising this discretion might fail to be sufficiently zealous in protecting the public." Id. at 246-47.

Holland further stated that the "only peculiar aspect of the entire scheme is that life without parole is not provided as an option to the judge in cases where the jury is unable to agree on either death or life without parole." Id. at 247. Holland states that even this is explainable, however. In capital cases, where the jury rejects life without parole, or fails to agree on it, the prosecutor has had the chance to seek that sentence. Id. The legislature could reasonably find that the prosecutor should not be allowed another chance to repeat his unsuccessful argument to a judge. Id. If the prosecutor has not sought a capital sentence, the sentence of life without parole has not been rejected and so it is reasonable to give the prosecution an opportunity to seek the sentence of life without parole. Id. Thus, the New York legislature was not irrational in promulgating the sentencing schemes in capital and non-capital cases.

Therefore, in the alternative, the petition on this ground should be denied on its merits.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**

Furthermore, the Court finds that Johnson has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) (a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."); see Slack v. McDaniel, 592 U.S. 473, 474 (2000). Therefore, the

Court recommends that no certificate of appealability should issue with respect to any of petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED: April 1, 2010
       Albany, New York

*David R. Homer* (signature)
David R. Homer
U.S. Magistrate Judge